**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MARTIN R. TACCETTA, | : | CIVIL ACTION NO. 09-5508 (MLC) |
| Petitioner, | : | **O P I N I O N** |
| v. | : | |
| MICHELLE R. RICCI, et al., | : | |
| Respondents. | : | |

**COOPER, District Judge**

Petitioner, Martin R. Taccetta, petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and Respondents submit an answer (ECF No. 26) with the available state court record. Petitioner also filed a traverse to the answer (ECF No. 44). For the following reasons, the petition will be denied.

### BACKGROUND

The relevant facts are set forth in the opinion of the New Jersey Appellate Division in Petitioner's direct appeal. See State v. Taccetta, 301 N.J.Super. 227 (App.Div.) ("Taccetta I"), cert. denied, 152 N.J. 187 (1997). This Court will not recite the elaborate facts and background of this case here; however, a full background was set forth by the Appellate Division in Taccetta I.

For purposes of this Opinion, the Court notes the procedural history of Petitioner's criminal trial as follows:

> A State Grand Jury indictment is the legal genesis for these appeals by defendants Martin and Michael Taccetta which we have consolidated for opinion purposes. The factual genesis is the Taccetta brothers' participation in an organized criminal enterprise known as La Cosa Nostra (LCN), literally "Our Thing."

> A State Grand Jury indicted the Taccetta brothers, Anthony Accetturo, Thomas Ricciardi, Michael Ryan, and Joseph Sodano in a seven-count indictment. The indictment charged: Accetturo, the Taccettas, Ricciardi, Ryan, and Sodano with second-degree racketeering conspiracy (count one, N.J.S.A. 2C:41-2b, c); Accetturo, Ricciardi, and Martin Taccetta with first-degree racketeering (count two, N.J.S.A. 2C:41-2c; 2C:2-6); Accetturo with second-degree leader of organized crime (count three, N.J.S.A. 2C:41-1; 2C:5-2g); Ricciardi, Martin Taccetta, and Ryan with first-degree murder (count four, N.J.S.A. 2C:11-3a(1), (2); 2C:2-6); Accetturo, Michael Taccetta, Martin Taccetta, and Ricciardi with two counts of second-degree theft by extortion (counts five and six, N.J.S.A. 2C:20-5; 2C:2-6); and Accetturo and Ricciardi with second-degree theft by extortion (count seven, N.J.S.A. 2C:20-5; 2C:2-6).

> All defendants except Sodano were tried together before a jury. On August 13, 1993, the jury found Martin Taccetta guilty of counts one, two, five, and six, consisting of the racketeering conspiracy supported by two predicate acts, as well as the substantive offenses of racketeering and extortions of Pasquale and Vincent Storino, but acquitted Martin of the murder of Vincent Craporatta. The jury also found Michael Taccetta guilty of counts one, five, and six. Although not relevant to these appeals, the jury found Accetturo and Ricciardi guilty on all counts but acquitted Ryan on all counts.

> The trial court found Martin Taccetta eligible for an extended term sentence both as a persistent offender and as a professional criminal. <u>See</u> N.J.S.A. 2C:44-3a, b. The court, after merging count one into count two, sentenced Martin as follows: life with 25 years parole ineligibility

on count two; 10 years with 5 years parole ineligibility
on count five consecutive to the term on count two; and
10 years with 5 years parole ineligibility on count six
concurrent with count five but consecutive to count two.
The court also imposed required Violent Crimes
Compensation Board (VCCB) penalties.

The court similarly found Michael Taccetta eligible for
an extended term and sentenced him to 20 years with 10 years
parole ineligibility on count one, 10 years with 5 years
parole ineligibility on count five consecutive to the
sentence on count one; and 10 years with 5 years parole
ineligibility on count six to run consecutive to the
sentence on count five. The court also imposed required
VCCB penalties.

Taccetta I, 301 N.J.Super. at 230-32.[1]

Petitioner sought post-conviction relief ("PCR") in the trial
court, which was denied. However, in 2002 the Appellate Division
remanded for an evidentiary hearing on the issue of ineffective
assistance of counsel. See State v. Taccetta, 351 N.J.Super. 196
(App.Div.) ("Taccetta II"), cert. denied, 174 N.J. 544 (2002).

On December 7, 2005 after an evidentiary hearing, the PCR judge
found that Petitioner had been ineffectively represented, vacated
the convictions, and ordered that Petitioner be retried. Petitioner
was released on bail the following day. See State v. Taccetta, Nos.

---

[1]     Pursuant to 28 U.S.C. § 2254(e)(1), "In a proceeding instituted
by an application for a writ of habeas corpus by a person in custody
pursuant to the judgment of a State court, a determination of a
factual issue made by a State court shall be presumed to be correct.
The applicant shall have the burden of rebutting the presumption of
correctness by clear and convincing evidence."

A-2505-05T3, A-2581-05T3, 2008 WL 596192, at *1 (N.J. App.Div. Mar. 6, 2008) ("Taccetta III").  The PCR court found that defense counsel provided Petitioner with constitutionally deficient advice as to sentencing consequences during plea negotiations.  See id.  The Appellate Division affirmed the PCR judge's decision.  See id.

But the New Jersey Supreme Court granted certification of the petition on appeal and reversed.  See State v. Taccetta, 200 N.J. 183 (2009) ("Taccetta IV").  The New Jersey Supreme Court found:

> We need not review the soundness of the fact-findings made by the PCR judge because we conclude, as a matter of law, that defendant could not have entered a plea of guilty to the purported plea proposal. We reach that conclusion for the simple reason that a defendant does not have the right to commit perjury in giving a factual basis for a crime that he insists he did not commit. Therefore, even if defendant met the first prong of the Strickland/Fritz standard — that his counsel was constitutionally ineffective for giving him mistaken advice about the sentencing consequences of proceeding to trial — defendant cannot satisfy the second prong of that standard, which requires a showing of prejudice. See Fritz, supra, 105 N.J. at 52, 519 A.2d 336 (citation omitted); see also Strickland, supra, 466 U.S. at 697 . . . ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.").

> Despite the PCR judge's findings, defendant was legally disabled from taking the plea offer because he testified that he would have lied under oath in order to plead guilty to aggravated manslaughter. Thus, defendant would have been compelled to go to trial. For that reason, he cannot establish that "'but for counsel's unprofessional errors,

4

the result of the proceeding would have been different.'"
Ibid. *(*quoting Strickland*,* supra, 466 U.S. at 694 . . .).

We are not required to give "deference to the legal
conclusions of the PCR court," State v. Feaster, 184 N.J.
235, 278, 877 A.2d 229 (2005) (citation and internal
quotation marks omitted), particularly wrong ones.

Taccetta, 200 N.J. at 194-95.  The New Jersey Supreme Court vacated

the grant of PCR, reinstated Petitioner's convictions and sentence,

and remanded to the PCR court.  See id. at 198-99.

**PETITIONER'S CLAIMS**

On October 27, 2009, Petitioner filed a Petition for a Writ of

Habeas Corpus, pursuant to 28 U.S.C. § 2254.  On December 8, 2010,

counsel filed an Amended Petition (ECF No. 14).  Petitioner states

the following claims in his Amended Petition (taken from his state

court Petition for Post-Conviction Relief):

> Point I:
> Defense counsel's failure, during the plea bargaining
> process, to properly advise Petitioner about the terms of
> imprisonment he would likely be subject to upon conviction
> by the jury, thereby causing Petitioner to elect to go to
> trial rather than accept a plea bargain and plead guilty,
> violated Petitioner's right to the effective assistance
> of counsel.
>
> Point II:
> The failure of defense counsel to object to the admission
> into evidence of statements of "fear" attributable to the
> victims of the extortions violated Petitioner's right to
> the effective assistance of counsel.
>
> Point III:
> Defense counsel failed to subject the state's case to
> meaningful adversarial testing.

Point IV:
Defense counsel rendered ineffective assistance of counsel when he failed to request certain jury charges or, alternatively, when he failed to object to the charge ultimately delivered by the trial judge to the jury. Additionally, appellate counsel rendered ineffective assistance when they failed to raise the same challenges to the jury charge.

Point V:
Defense counsel rendered ineffective assistance of counsel during the sentencing phase because he failed to object to the fact that, since "crime of violence" was an essential, material element of first degree racketeering that had to be charged to and ultimately found by the jury, the trial judge's determination during sentencing that the extortions of which Petitioner was convicted constituted "crimes of violence" impermissibly and unconstitutionally infringed on the proper province of the jury. [Appellate Counsel was ineffective in not raising this on appeal.]

Point VI:
Defense counsel rendered ineffective assistance of counsel during the sentencing phase because he failed to object to the fact that, though the indictment charged and the jury was instructed to find that Petitioner was either guilty of extortion [under one statute or another], the trial judge at sentencing nevertheless unilaterally determined that the jury found petitioner guilty of [one type of extortion] . . . . [Appellate Counsel was ineffective in not raising this on appeal.]

As these claims were the same claims as raised in his PCR motion, Petitioner's claims were duly exhausted before the New Jersey state courts.

Respondents' Answer denies Petitioner's allegations and asserts that his conviction is "lawful and just." (Resp'ts Answer at 8.)

**DISCUSSION**

**A.    Section 2254 Cases**

28 U.S.C. § 2254 provides, in pertinent part:

The Supreme Court, a Justice thereof, a circuit judge, or a
district court shall entertain an application for a writ of
habeas corpus in behalf of a person in custody pursuant to the
judgment of a State court only on the ground that he is in custody
in violation of the Constitution or laws or treaties of the
United States.

28 U.S.C. § 2254(a).

With respect to any claim adjudicated on the merits in state

court proceedings, the writ shall not issue unless the adjudication

of the claim:

(1) resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established Federal law,
as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented
in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent

"if the state court applies a rule that contradicts the governing law

set forth in [Supreme Court] cases," or "if the state court confronts

a set of facts that are materially indistinguishable from a decision

of th[e] Court and nevertheless arrives at a result different from

[the Court's] precedent."  Williams v. Taylor, 529 U.S. 362, 405–

06 (2000) (O'Connor, J., for the Court, Part II).  A state court

decision "involve[s] an unreasonable application" of federal law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," and may involve an "unreasonable application" of federal law "if the state court either unreasonably extends a legal principle from [the Supreme Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply" (although the Supreme Court expressly declined to decide the latter). Id. at 407-09. To be an "unreasonable application" of clearly established federal law, the state court's application must be objectively unreasonable. See id. at 409. In determining whether the state court's application of Supreme Court precedent was objectively unreasonable, a habeas court may consider the decisions of other federal courts. See Matteo v. Superintendent, 171 F.3d 877, 890 (3d Cir. 1999).

The deference required by § 2254(d) applies without regard to whether the state court cites to Supreme Court or other federal case law, "as long as the reasoning of the state court does not contradict relevant Supreme Court precedent." Priester v. Vaughn, 382 F.3d 394, 398 (3d Cir. 2004) (citing Early v. Packer, 537 U.S. 3 (2002); Woodford v. Visciotti, 537 U.S. 19 (2002)).

**B.    Petitioner's Habeas Claims Will Be Denied**

**1.    Standard of Review for Ineffective Assistance Claims**

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  The right to counsel is "the right to _effective_ assistance of counsel."  McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970) (emphasis added).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different.  See Strickland v. Washington, 466 U.S. 668, 687, 694 (1984).  A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome."  Id. at 694.  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Id. at 687.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.

The performance and prejudice prongs of Strickland may be addressed in any order, and "[i]f it is easier to dispose of an

ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." Id. at 697.

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." Id. at 690-91. If counsel has been deficient in any way, however, the habeas court must determine whether the cumulative effect of counsel's errors prejudiced the petitioner within the meaning of Strickland. See Berryman v. Morton, 100 F.3d 1089, 1101-02 (3d Cir. 1996).

The established test for determining the validity of a guilty plea is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). Where a defendant is represented by counsel and enters a guilty plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice "'was within the range of competence demanded of

attorneys in criminal cases.'"  Hill v. Lockhart, 474 U.S. 52, 56

(1985) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).

Hill holds that a claim of ineffective assistance of counsel

in the context of a guilty plea is subject to the same standard of

attorney competence set forth in the first Strickland prong.  See

474 U.S. at 58-59.  But Hill specifically held that where the

collateral challenge is to a plea of guilty rather than a trial

verdict, the "prejudice" prong requires the petitioner to "show that

there is a reasonable probability that, but for counsel's errors,

he would not have pleaded guilty and would have insisted on going

to trial."  Id.; see Parry v. Rosemeyer, 64 F.3d 110, 118 (3d Cir.

1995) (citing Hill).  In setting forth that standard, Hill

emphasized the "fundamental interest in the finality of guilty

pleas."  474 U.S. at 58 (citing United States v. Timmreck, 441 U.S.

780, 784 (1979)).  Cf. Missouri v. Frye, 132 S.Ct. 1399, 1408 (2012)

(holding that as general rule, defense counsel has the duty to

communicate to client any formal plea bargain offers from

prosecution; stating in dicta that "[t]he alternative courses and

tactics in negotiation are so individual that it may be neither

prudent nor practicable to try to elaborate or define detailed

standards for the proper discharge of defense counsel's

participation in the [plea bargain] process.").

### 2. Petitioner's Claims (Points II through VI)

Petitioner's claims concern the assistance of counsel he received at his criminal trial and on appeal. As noted, Petitioner's claims were presented to the New Jersey state courts in his PCR petition. See, e.g., Taccetta II. Petitioner's first claim, that counsel was ineffective for failing to properly advise him about the terms of imprisonment he would be likely subjected to upon conviction by a jury, resulting in Petitioner rejecting a plea bargain, received significant attention in the state courts. This Court will address this point separately, but first turns to the other ineffective assistance of counsel claims, Points II through VI.

Citing Strickland, the PCR judge rejected Petitioner's claims. As to each claim, the PCR judge held as follows.

As to Point II, failure of counsel to object to the statement of "fear" by victims of extortion, the PCR judge held:

> Defendant contends that defense counsel was ineffective with respect to the admission of hearsay statements by Pat Storino as to who had killed Vincent Craporatta as well as expressions of fear by Storino. Any prejudicial impact of hearsay that was before the jury was eliminated by the court's instruction to the jury to disregard the testimony in question. None of the defense counsel, including counsel for defendant Martin Taccetta requested any further curative instruction and were apparently satisfied that any statements expressing fear by Pat Storino had also been excluded. This cannot be said to have been an unreasonable conclusion on their part.

(See Resp'ts Exhibits, 1-27-00 Judge Greenberg Dec., ECF No. 32-5 at pp. 9-14 ("Greenberg PCR Letter Op.").)

As to Point III, defense counsel's failure to subject the state's case to meaningful adversarial testing, the PCR judge held:

> Counsel for defendant contends that trial counsel was ineffective in failing to confront Philip Leonetti with the content of a certain FBI report containing material allegedly inconsistent with his testimony. It is clear that avoidance of reference to the content of the FBI report was a matter of trial strategy. This conclusion is buttressed by the certification of defense counsel . . . attached to defendant's reply brief. . . . Obviously, actions taken by competent counsel as matters of trial strategy should not be second guessed at later proceedings unless it can be shown that the strategy was palpably without merit at the time it was undertaken. No such showing has been made here.

(Greenberg PCR Letter Op., ECF No. 32-5 at pp. 10-11.)  As to counsel's decision to forgo calling the Storinos as witnesses, the PCR court also found this to be a strategic trial decision not warranting a finding of deficient performance.  (See id. at p. 11.)

As to Point IV and Point VI, regarding Petitioner's challenges to jury charges and the effect of the charges on Petitioner's sentencing, the PCR court carefully examined each challenge and found them to be without merit to warrant ineffective assistance.  The PCR judge found that: (1) a request for a second-degree racketeering charge would have been properly denied, and therefore counsel was not ineffective in failing to request it; (2) assuming counsel could

13

have requested a unanimous finding charge, any such lapse could not have conceivably affected the result of trial as it would have been superfluous; (3) based on the evidence that there was no lesser offense to which Petitioner could have been convicted, there was no reason for counsel to request a charge that an accomplice could act with a lesser mental state than a principal and therefore be guilty of a lesser offense; (4) counsel was not ineffective for failing to request a charge on conspiracy as a lesser included offense of extortion, since it does not appear that Petitioner could have been found not guilty of extortion but guilty of conspiracy; (5) there was no need for a mistrial motion or jury charge on variance because the trial was not particularly complex or replete with conflicting testimony; (6) counsel was not ineffective for failing to object to a coercive sequencing in the charge or the verdict form; and (7) there was no ineffective assistance of counsel at sentencing as counsel argued that extortion by threat of bodily injury was not a crime of violence.  (See id. at pp. 12-13.)

Petitioner also argues in Point V that the trial judge's finding during sentencing that the extortions for which Petitioner was convicted were "crimes of violence" infringed on the province of the jury.  Petitioner argued that counsel should have objected, and that whether Petitioner's conviction was a "crime of violence" should have

been submitted to the jury.  As to this argument, the PCR judge found that "the extortions in this case were crimes of violence as a matter of law [, thus] it would not have been appropriate to submit the question to a jury and therefore any failure to request a jury charge in this respect cannot be said to have been deficient performance by counsel."  (See id. at p. 10.)

Although the Appellate Division remanded to the PCR judge on Point I concerning representation during the plea negotiations, the Appellate Division affirmed all other claims, citing Strickland. The Appellate Division noted: "The dismissal of the petition for post-conviction relief is affirmed on all grounds raised except the ineffective assistance of counsel in the plea proceedings." Taccetta II, 351 N.J.Super. at 202.

Substantially for the reasons stated in the Appellate Division opinion, this Court agrees that Petitioner has not established his right to habeas relief.  Counsel did not act unreasonably in failing to request these charges and raise these arguments before the state court; they would not have succeeded.  Further, Petitioner has not shown any prejudice that resulted from the alleged failures of trial counsel.  A review of the record reveals that there was ample evidence to support Petitioner's conviction, including numerous state witnesses, the credibility of whom were assessed by the jury.

Any errors on counsel's part, if they exist, are unlikely to have affected the result.

Petitioner's trial lasted four months, and counsel was able to secure an acquittal on the murder charge. See Taccetta IV, 200 N.J. at 187. As stated by the Appellate Division in Taccetta I, "The State presented a plethora of evidence." 301 N.J.Super. at 234. The record reveals that twelve witnesses were called by the State; however, the testimony of three "turncoats" was used against Petitioner: Philip Leonetti, John Januska, and Alphonse D'Arco. (See Resp'ts Exhibit, Pet'r Direct Appeal Brief, ECF No. 28-1 at pp. 19-26 of 165.) These three witnesses testified as to Petitioner's involvement in the murder and in the criminal enterprises of organized crime. The jury was able to weigh their testimony and assess their credibility. Defense counsel was not rendered ineffective because the jury chose to believe the State's case over the case presented by defense counsel.

The decisions by the state courts on the ineffective assistance of counsel issues were not contrary to, and did not involve an unreasonable application of, clearly established federal law. Nor were they based on an unreasonable determination of the facts presented in the state court proceedings. Therefore, Petitioner is not entitled to relief on these claims.

### 3.   Petitioner's Claim (Point I)

In Point I of his Amended Petition, Petitioner argues that:

> During the plea bargaining negotiations, petitioner's counsel . . . consistently advised petitioner that if he went to trial and if the jury acquitted him of the homicide but convicted him of the other charges in the indictment, he would be subject, at worst, to two (2) five to ten year sentences on the extortion counts running consecutive to each other.  [Counsel] further advised petitioner that if that scenario played out on the substantive offenses, the conspiracy to commit racketeering charge would merge with the substantive racketeering charge, and petitioner would receive five to ten years on the substantive racketeering count to run concurrent to the sentence on the extortion counts.  According to [Counsel] therefore, petitioner would likely spend ten years in prison if acquitted of the homicide but convicted of all other charges.

> Based upon these representations, petitioner declined to accept a proffered plea bargain to aggravated manslaughter and a sentence of twenty years, since he would likely spend more time in prison under the plea bargain than if he were to go to trial and be convicted of all but one of the charges against him.

***

> In summary, petitioner was charged in 1991 with second-degree racketeering conspiracy, first-degree racketeering, first-degree murder, and two counts of second-degree extortion.  He was offered a plea-bargain involving a plea to aggravated manslaughter and a 20 year sentence with an 8 year parole disqualifier.  His defense attorney advised him that this offer was of little or no value since, if he was acquitted of the murder as expected, he would face a maximum of 20 years and a likely sentence of 10 years.  Counsel even reiterated this misinformation on television following the verdict.  Relying on this advice, petitioner rejected the plea-bargain and proceeded to trial.

(Amended Petition, ¶ 12(a).)

As set forth by Petitioner and shown in the record, Petitioner raised this claim in his PCR petition.  The PCR judge rejected the argument, finding that at the time in question, counsel's opinion was not unreasonable.  "At the time, no reported New Jersey case had held that extortion accomplished by a threat of bodily harm was a crime of violence as a matter of law."  (<u>See</u> Greenberg PCR Letter Op., ECF No. 32-5 at p. 13.)  Further, the PCR judge found "that rejection of any plea offer was not based upon any improper action or omission on the part of [counsel].  The only reasonable inference that can be drawn from the facts is that defendant rejected any plea offer because he felt he would be acquitted.  Thus, neither prong of the <u>Strickland</u> test has been met as to the plea bargaining issue."  <u>See</u> <u>id.</u>

The Appellate Division in <u>Taccetta II</u> remanded on this issue. The Appellate Division cited <u>Strickland</u> and noted that Petitioner had made a prima facie showing to warrant an evidentiary hearing on this issue.  After remand, the PCR judge found that Petitioner's rights had been violated under <u>Strickland</u> in that counsel performed deficiently, with the deficient performance affecting the results of his proceeding, and the Appellate Division affirmed.  <u>See</u> <u>Taccetta III</u>, 2008 WL 596192, at *4.

But the New Jersey Supreme Court disagreed and found that Petitioner had not shown that he suffered prejudice from any deficient

advice from counsel under <u>Strickland</u>. Examining the transcripts of
Petitioner's testimony at the PCR evidentiary hearing, the New Jersey
Supreme Court noted that Petitioner testified that he would have
perjured himself to enter a false guilty plea. <u>See</u> <u>Taccetta IV</u>, 200
N.J. at 192-93. Petitioner stated under oath that he would have pled
guilty to murder even though he was innocent. <u>See</u> <u>id.</u> at 192 (quoting
Petitioner's testimony).

> The New Jersey Supreme Court found:
>
> We need not review the soundness of the fact-findings made
> by the PCR judge because we conclude, as a matter of law,
> that defendant could not have entered a plea of guilty to
> the purported plea proposal. We reach that conclusion for
> the simple reason that a defendant does not have the right
> to commit perjury in giving a factual basis for a crime
> that he insists he did not commit. Therefore, even if
> defendant met the first prong of the <u>Strickland</u>/<u>Fritz</u>
> standard - that his counsel was constitutionally
> ineffective for giving him mistaken advice about
> sentencing consequences of proceeding to trial --
> defendant cannot satisfy the second prong of that
> standard, which requires a showing of prejudice.

<u>Id.</u> at 194-95 (citing <u>State v. Fritz</u>, 105 N.J. 42, 52 (1987) and
<u>Strickland</u>, 466 U.S. at 697).

The New Jersey Supreme Court also addressed Petitioner's case
in the context of <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970). <u>See</u>
<u>id.</u> at 196 n.8. The Court recognized that <u>Alford</u> pleas, where a
sentencing judge may accept a plea from a defendant who makes a claim
of innocence at the time of sentencing, must be supported by a "strong

factual basis" at the time of sentencing. See id. Also, the Court

noted that some federal courts reject Alford pleas, and that Federal

Rule of Criminal Procedure 11(b)(3) requires that "[b]efore entering

judgment on a guilty plea, the court must determine that there is

a factual basis for the plea." Id. (citations omitted).

This Court finds that the state courts did not unreasonably

apply Alford to warrant habeas relief. The New Jersey Supreme

Court's ruling did not "result in a decision that was contrary to,

or involved an unreasonable application of clearly established

federal law, as determined by the Supreme Court of the United States."

See 28 U.S.C. § 2254(d)(1). While Circuits have split over whether

to accept Alford pleas, in assessing the merits of a habeas case,

we look to the United States Supreme Court precedent, not the various

holdings of the Courts of Appeals. See id.

As Respondents point out in their Answer, Alford notes that a

defendant does not have an absolute constitutional right to have a

guilty plea accepted by a court; however, "the States may by statute

or otherwise confer such a right." 400 U.S. at 38 n.11. Also, Alford

explains that "the States may bar their courts from accepting guilty

pleas from any defendants who assert their innocence." Id. In this

case, the New Jersey Supreme Court has done just that, stating:

> The notion that a defendant can enter a plea of guilty,
> while maintaining his innocence, is foreign to our state
> jurisprudence. Court-sanctioned perjury is not a

> permissible basis for the entry of a plea in this State.
> Rule 3:9-2 instructs our courts not to accept a plea of
> guilty unless "*there is a factual basis for the plea and
> that the plea is made voluntarily*, not as a result of any
> threats or of any promises or inducements not disclosed
> on the record, and with an understanding of the nature of
> the charge and the consequences of the plea." (Emphasis
> added). To accept a guilty plea, a judge must be satisfied
> from the lips of the defendant that he committed the acts
> which constitute the crime. Even if a defendant wished
> to plead guilty to a crime he or she did not commit, he
> or she may not do so. No court may accept such a plea.

Taccetta IV, 200 N.J. at 195-96 (internal citations and quotation
marks omitted).

Therefore, it is clear that New Jersey courts are not permitted
to accept guilty pleas by defendants claiming to be innocent. This
is in accordance with Alford's directive that States may bar their
courts from accepting such guilty pleas.

As the New Jersey state courts analyzed Petitioner's claim under
Strickland, and the decision was not contrary to Alford or any other
clearly established Supreme Court precedent as to this ineffective
assistance of counsel claim, Petitioner has not shown that the
adjudication resulted in a decision that was (1) contrary to, or
involved an unreasonable application of, clearly established Federal
law, as determined by the United States Supreme Court, or (2) based
on an unreasonable determination of the facts in light of the evidence
presented in the State court proceeding. See 28 U.S.C. § 2254(d).
As such, his habeas claim must be denied.

## C.    Certificate of Appealability

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

Petitioner has failed to make a substantial showing of the denial of a constitutional right.  No certificate of appealability shall issue.

### CONCLUSION

The Petition and Amended Petition for a Writ of Habeas Corpus will be denied.  No certificate of appealability will issue.  The Court will issue an appropriate order and judgment.

            s/Mary L. Cooper
            **MARY L. COOPER**
            United States District Judge

Dated:  June 3, 2013